**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | |
|---|---|
| VOXPATH NETWORKS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 4:08-cv-00127-RAS |
| ) | |
| VERIZON COMMUNICATIONS, INC., ) | |
| et al. ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' MOTION TO COMPEL VOXPATH TO PROVIDE INFRINGEMENT CONTENTIONS THAT COMPLY WITH PATENT RULE 3-1

Defendants Apptix, Inc.; Broadview Networks Inc.; Broadview Networks Holdings, Inc., Covad Communications Group, Inc., Embarq Communications, Inc.; MCI Communications Services, Inc., Verizon Business Network Services Inc.; Verizon Select Services Inc.; and Verizon Teleproducts Corp. (hereinafter "Defendants") respectfully request that the Court order Voxpath to provide forthwith Infringement Contentions that comply with Patent Rule 3-1 because Plaintiff Voxpath Networks, Inc.'s ("Voxpath") Supplemental Infringement Contentions ("Supplemental Contentions") do not comply with the requirements of Patent Rule 3-1.

## INTRODUCTION AND PROCEDURAL HISTORY

Under the Rules of Practice for Patent Cases, VoxPath was required to serve Infringement Contentions containing, *inter alia*, information identifying "each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party. . . . by name or model number, if known." P.R. 3-1(b). VoxPath was also required to provide "a chart identifying specifically *where* each element of each asserted claim is found within each Accused Instrumentality. . . ." P.R. 3-1(c) (emphasis supplied).

Pursuant to the Scheduling Order of September 12, 2008 (Docket No. 115), VoxPath served its Infringement Contentions ("original Contentions") on November 10, 2008. (Exhibit 1) After reviewing them, Defendants concluded that the original Contentions failed to comply with the requirements of P.R. 3-1 in numerous respects, as discussed in the following section of this memorandum. Defendants therefore put Voxpath on notice of these deficiencies and requested that VoxPath submit Supplemental Contentions to cure the deficiencies. *See, e.g.*, November 18, 2008 Letter from Charkow to Anderson (Exhibit 2) and December 8, 2008 Letter from Bertin to Anderson (Exhibit 3). These letters specifically requested Voxpath to provide infringement contentions specifying, in compliance with P.R. 3-1, how each Accused Instrumentality meets the claim limitations of the '646 patent. Following a conference of counsel on December 30, 2008, pursuant to Local Rule CV-7(h). VoxPath agreed to provide Supplemental Contentions and further agreed not to oppose deferral of Defendants' P.R. 3-4(a) document production until January 14, 2009. *See* Order of January 9, 2009 (Document No. 176).

Voxpath served its Supplemental Contentions on January 9, 2009. (Exhibit 4) The Supplemental Contentions contain no substantive changes from the original Contentions. Instead, the Supplemental Contentions contain only a few cosmetic changes, such as substituting the name of a Defendant's product or service for "Accused Instrumentalities", but, in contravention of P.R. 3-1(c), provide no additional information about "where each element of each asserted claim is found within each Accused Instrumentality."

Under this Court's Order of January 9, 2009, Defendants are presently due to serve by January 14, 2009, in accordance with P.R. 3-4(a), "source code, specifications, schematics, flow charts . . .or other documentation sufficient to show the operation of any *aspects or elements* of an Accused Instrumentality *identified by the patent claimant in its P.R. 3-1(c) chart*" (emphasis

added).  In their present form, Voxpath's Supplemental Contentions make it impossible for Defendants to determine what documents might be responsive because VoxPath has not identified any such specific "aspects or elements."  At best, Voxpath's essentially unchanged Supplemental Contentions continue to impose an indecipherable but apparently limitless burden on Defendants, who simply cannot determine what VoxPath is asserting and therefore what documentation (other than every document in their possession pertaining to their accused commercial offerings) should be produced.  Consequently, Defendants have no alternative but to request that the Court compel VoxPath to provide Infringement Contentions that comply with the requirements and purposes of this Court's Patent Rules, so that Defendants may then expeditiously identify and produce documents that are "sufficient to show the operation of any aspects or elements of an[y] Accused Instrumentality" that Voxpath may actually identify.[1]

## VOXPATH'S SUPPLEMENTAL INFRINGEMENT CONTENTIONS

VoxPath's Supplemental Contentions are deficient in numerous material respects.  To begin with, Voxpath asserts under the heading "Patent Rule 3-1(a)" that all Defendants "infringe at least claims 1-18 of the '646 patent" (Exhibit 4, at 2) -- *i.e.*, every Defendant's accused instrumentality(s) supposedly meet every element (there are 47) of every claim in Patent No. 7,068,646 ("the '646 patent").  Voxpath then refers to various exhibits that carry the names of one or more (up to six) commercial offerings of each defendant. *Id.*  Under the heading "Patent Rule 3-1(b)" -- a rule that requires identification by name of, *inter alia*, specific products or processes that allegedly infringe each claim -- VoxPath provides one sentence that does not identify any accused product or service of any Defendant by name, that does not identify any specific claims, and that, in the concluding clause, attributes the claim language itself to Methods, Systems, and Products

---

[1]   Defendants have been able in some instances to identify documents that likely pertain to the general product(s) or service(s) named by VoxPath and have commenced the production of such documents.

"made, used, sold (or licensed), offered for sale (or license), or imported into the United States by or for the Defendants since June 27, 2006 (collectively, the 'Accused Instrumentalities')." *Id.* at 2-3. As discussed hereinafter, such generic disclosures are not sufficient.

VoxPath has provided a claim chart for each accused product or service of each Defendant.[2] Voxpath's claim charts are virtually identical for every Defendant and for each product or service of each Defendant. VoxPath's claim charts are devoid of any real substance.

First, the charts contain no indication that the information set forth in the charts is actually used in Defendants' respective products or services. The claim charts consist largely of repetitive quotations from various publicly available documents, including (i) an "Internet-Draft" dated October 23, 2008; (ii) a specification referred to as RFC 2543 that predates the filing of the patent by more than a year and applies only to one particular type of voice-over-internet ("VoIP") call signaling, known as Session Initiation Protocol ("SIP"); and (iii) a three-page web document apparently posted by Technology Marketing Corporation on its website www.tmcnet.com. VoxPath never explains how these publicly available documents provide or contribute to any of the information required by P.R. 3-1 or, even more fundamentally, how these documents relate in any way to any product(s) or service(s) of any of the Defendants.

Second, VoxPath devotes more than 24 pages of the 50+ page claim chart which it has served for each Defendant's accused product(s) or service(s) to quotations of "exemplary packet header[s]" that are of unknown origin, that are exactly the same in the charts for each Defendant, that provide no information on whether the packet header is used in a particular product or service and, if so, *where* the packet header might be found in that product or service, and that provide no indication of how utilization of one or more of these packet headers would allegedly infringe some

---

[2] These charts are attached hereto as Exhibits 5-20.

element of the '646 patent.

Third, the claim chart for each Defendant addresses the Accused Instrumentalities in wholly general and undelineated terms, merely repeating with respect to each asserted claim element the verbiage of the claim without providing any of the additional information required by P.R. 3-1 and 3-2. Thus, with respect to Claim 1, "a method for performing IP telephony . . .", VoxPath states, for each defendant, that that Defendant's product or service "comprises a method for performing IP telephony" and "comprises performing IP telephony." *See, e.g.*, Exhibit 5, "Apptix VOIP Exhibit," at 1. With respect to Claim 2, "the method of claim 1, further comprising: sending the selected IP address of the first Media Gateway to the second Media Gateway; and sending the selected IP address of the second Media Gateway to the first Media Gateway," Voxpath states, for each Defendant, that that Defendant's product or service "comprises sending the selected IP address of the first Media Gateway to the second Media Gateway, and sending the selected IP address of the second Media Gateway to the first Media Gateway. . . ." *See, e.g.*, Exhibit 6, "Broadview Hosted PBX Exhibit, at 16. For Claim 7(j), "wherein the media Gateway Controller is operable to select the second Media Gateway based on the destination number," Voxpath states, for each Defendant, that that Defendant's product or service "comprises the Media Gateway Controller being operable to select the second Media Gateway based on the destination telephone number." *See, e.g.*, Exhibit 9, "Covad Clearedge Pro Voice Service Exhibit," at 29. For claim 13(e), "selecting the second Media Gateway based on the destination telephone number," Voxpath states, for each Defendant, that that Defendant's product or service, "comprises the Media Gateway Controller selecting the second Media Gateway based on the destination telephone number." *See, e.g.*, Exhibit 11, "Embarq Digital Key Trunks Exhibit," at 46. For Claim 18, "wherein the first Media Gateway and the second Media Gateway

each comprise one of an IP telephone or a Trunking Gateway, wherein the Trunking Gateway comprises an interface to the Public Switched Telephone Network (PSTN)," VoxPath states, for each Defendant, that that Defendant's product or service "comprises the first Media Gateway and the second media Gateway each comprising one of an IP telephone or a Trunking Gateway, wherein the Trunking Gateway comprises an interface to the Public Switched Telephone Network." *See, e.g.*, Exhibit 16, "Verizon Hosted IP Centrex Exhibit," at 54. The same parroting of the claim language appears in every claim chart for every Defendant in every entry for every claim element.

Fourth, while the charts refer to a few marketing statements or other high-level press releases from each company that VoxPath has taken from the Internet, neither the charts nor any other material included with the Contentions identify specifically *where* each element of each asserted claim is found within each Accused Instrumentality, as is required by P.R. 3-1(b) & (c). For instance, all of the independent claims of the '646 patent include a limitation requiring that a Media Gateway Controller ("MGC") receives a call setup request. *See, e.g.*, claim 1.c. Using Verizon as an example, Voxpath identifies a Session Border Controller ("SBC") as the MGC, but offers no assertion—not even on "information and belief"— nor any supporting exhibits for claiming that the SBC receives a call setup request. *See,* Exhibit 16, at 6. The charts are thus completely inadequate to identify what products or processes or aspects, structures or components thereof, allegedly infringe each claim and claim element, what components not in the public domain allegedly are found in the accused products or processes, or how any given claim or claim element is infringed.

Finally, VoxPath's Supplemental Contentions are deficient in the following additional respects which can be fully understood only through a comparison of VoxPath's original

Contentions and its marginally modified Supplemental Contentions:

- In the original Contentions, each claim chart had two columns, with the left-hand column entitled "Claim Language" and the right-hand column entitled "Examples taken from the Accused Instrumentalities." The representation that the information in the right-hand column was "Taken from the Accused Instrumentalities" appears to have been false, because VoxPath identified no information that had been obtained from testing or monitoring of any product or service named in the various charts. Defendants raised this concern with VoxPath in the December 30 meet-and-confer.

- In the claim charts accompanying its Supplemental Contentions, VoxPath changed the heading of the right-hand column to "Where each element is found with [marketing name of a Defendant's product or service]." However, Voxpath has made no substantive changes in or addition to the information previously provided in the right-hand column and thus still has not provided any information as to *where* any given claim element might be found in any given Defendant's product(s) or service(s).

- With respect to ten crucial claim elements (1.a, 1.c, 1.g, 1.h, 7.e, 7.l, 7.m, 13.a, 13.g, and 13.h) within the three independent claims of the '646 patent, Voxpath now states in the right-hand column of the claim charts accompanying its Supplemental Contentions, "Upon information and belief, SSP packet traces taken from operation of the [name of product or service] *will* reveal [the claim element being asserted]." (Emphasis supplied) Thus, VoxPath appears to admit that it has never, even at this late point in time, done any testing or monitoring of the accused products and services and, at the very least, VoxPath never discloses in its Supplemental Contentions any basis for its purported "information and belief" about testing which it seems clearly not to have done.[3]

- In each chart relating to a given product or service of a given defendant, in each and every entry in the right-hand column corresponding to one of the 47 asserted claim elements, VoxPath has changed "Accused Instrumentality" to the name of the product or service being addressed in that particular chart. (*Cf.* Exhibit 1 and Exhibit 4; *see also* examples, *supra*, at 4-5.) However, VoxPath has not added any additional or more specific information about any product or service.

Thus, even though Voxpath's Supplemental Contentions contain numerous, voluminous exhibits, they consist, even after the most careful and patient examination by the Defendants, of nothing more than meaningless repetition of the claim language, unexplained reliance on publicly available documents at least one of which seems plainly to constitute prior art, unexplained

---

[3]   As in its Complaint and Amended Complaint, Voxpath relies almost exclusively "[u]pon information and belief. VoxPath uses this hackneyed phraseology no fewer than 47 times in each product or service claim chart in its attempt to support its 47 asserted claim elements.

repetition on almost half of the pages in every claim chart of packet header information without disclosing its source or other possible relevance, calculated ambiguity about whether Voxpath has actually done any testing of any of the Accused Instrumentalities (and, indeed, apparently an implicit admission that it has not done so), and a total failure to identify *where* in the Accused Instrumentalities the asserted claim elements are allegedly found. Put simply, bulk does not equal substance, and this kind of generic boilerplate does not meet the letter, much less the spirit, of the requirements of the Patent Rules of this Court.

## ARGUMENT

I. **APPLICABLE LAW**

Before filing a patent infringement lawsuit, a plaintiff is required to specifically identify each accused instrumentality and determine specifically how each element of each asserted claim is infringed by each accused product. *View Eng'g Inc. v. Robotic Vision Sys., Inc*., 208 F.3d 981, 986 (Fed. Cir. 2000); *see* Fed. R. Civ. Proc. 11; *see also* P.R. 3-1 (a) - (c). Furthermore, in this jurisdiction, the Local Patent Rules require plaintiffs to disclose their infringement contentions early in the case. *See* P.R. 3-1. Patent Rule 3-1 requires plaintiffs "to state 'specific theories of infringement' in their PICs" to "create a specific trajectory for the case." *ConnecTel, LLC v. Cisco Sys., Inc*., 391 F. Supp. 2d 526, 527 (E.D. Tex. 2005) (citation omitted). As practice under the Patent Rules has confirmed, "when parties formulate, test, and crystallize their infringement theories, as the Patent Rules require, the case takes a clear path, focusing discovery on building precise final infringement or invalidity contentions, and narrowing issues for Markman, summary judgment, trial, and beyond." *Id*.

The early disclosure requirements of the Patent Rules are "designed specifically to require parties to crystallize their theories of the case early in the litigation." *Nike, Inc. v. Adidas America*

*Inc.*, 479 F. Supp. 2d , 664, 667 (E.D. Tex. 2007) (citations omitted); *see also 02 Micro Intern. Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006) (stating that Local Patent Rules "prevent shifting sands approach to claim construction"). "The Local Patent Rules exist to further the 'goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases, not to create supposed loopholes through which parties may practice litigation by ambush." *Nike*, 479 F. Supp. 2d at 667 (citations omitted).

"Under P.R. 3-1, a party asserting infringement must identify each claim that is allegedly infringed." *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. 2007). Additionally, the Patent Rules expressly require that "the party asserting infringement must also provide a chart identifying *specifically* where *each* element of *each* asserted claim is found within *each* Accused Instrumentality." *Id.* at 822-23 (emphasis in original).

In determining whether to strike non-compliant infringement contentions, courts consider the danger of unfair prejudice, the reason for and length of the delay, the importance of the particular matter, whether a lesser remedy would adequately address the other factors and deter future violations, and the diligence of the offending party. *Nike, Inc.*, 479 F. Supp. 2d at 668; *Computer Acceleration Corp.*, 503 F.Supp. at 822. This Court has stricken infringement contentions when they "wholly failed to comply" with the Patent Rules and where "[p]laintiffs inexplicably alleged that they lacked sufficient information to determine whether a particular product included the elements specified in the claims." *Williams Wireless Tech., Inc. v. Research In Motion, Corp.*, No. 4:06cv305, 2007 WL 1932806, at *1 (E.D. Tex. May 31, 2007) (Exh. 21).

## II. VOXPATH'S INFRINGEMENT CONTENTIONS DO NOT MEET THE REQUIREMENTS OF THE PATENT RULES

### A. Voxpath Does Not Disclose Specific, Differentiated Infringement Contentions.

Patent Rule 3-1 requires a plaintiff to serve specific contentions "[s]eparately for each

opposing party." In its Supplemental Contentions, Voxpath has now listed the marketing names of each Defendant's accused products or services and has served each Defendant with a claim chart for each accused product or service of that Defendant. For Defendant Verizon, for instance, Voxpath identifies five different product offerings. *See* Exhibits 16-20. These claim charts, however, are virtually identical in every respect for every defendant and for every product of every defendant. In any chart, one could easily substitute the name of any other product or service of that Defendant or, indeed, of any other Defendant. And that, in fact, is exactly what VoxPath has done -- no less and certainly no more. Serving the identical infringement claim chart to multiple defendants in a patent infringement case is not acceptable under the Patent Rules of this Court. *Linex Techs., Inc. v. Belkin Int'l, Inc.*, 2008 WL 4372708 at *423-24 (E.D. Tex. 2008) (Exh. 22).

> **B.** **Voxpath Fails to Identify Where Each Element of Each Asserted Claim Can Be Found Within Each Accused Product.**

Voxpath's claim charts do not state where each element of each asserted claim is found within each accused product or process, as required by P.R. 3-1(c). *See* P.R. 3-1(c) (requiring "[a] chart identifying specifically *where* each element of each asserted claim is found *within* each Accused Instrumentality. . . .") (emphasis supplied). Entries in Voxpath's claim charts do not provide any indication of how each particular structure or functionality in the accused product(s) or process(es) allegedly meets one or more claim elements. The charts thus fall far short of the P.R. 3-1(c) requirement for "the identity of the structure(s), act(s), or material(s) *in* the Accused Instrumentality that performs the claimed function." (Emphasis supplied)

In *ConnectTel, LLC v. Cisco Sys., Inc.* 391 F.Supp.2d 526 (E.D. Tex. 2005), this Court ordered the plaintiff to provide more detail in its Infringement Contentions in order to comply with Patent Rule 3-1. *Id.*, 391 F.Supp. 2d at 528. There, the Court concluded that the plaintiff's infringement contentions did not comply with the Patent Rules because of ConnecTel's "shotgun

accusations of hundreds of products infringing hundreds of claims." *Id.* The Court in *ConnecTel* also disapprovingly observed that the claim charts at issue "simply mimic the claim language of the patents-at-issue, rather than explaining how the accused products infringe the patents at issue." *Id.* at 527. Although the claim charts contained over 600 footnotes, the Court found that these footnotes provided no guidance as to where any of the claim elements could be found in the accused products.

The situation here is indistinguishable from that in *Connectel*. Rather than comply with P.R. 3-1, Voxpath attempts to support its indiscriminate allegations against all the Defendants by citing only to third-party publications that are either prior art or not linked to accused instrumentalities. *See* Exhibit 5 at Exhibits F, G and H; *see also* Exhibit 6 at Exhibits I and J; *see also* Exhibit 9 at Exhibits F, G, and H; *see also* Exhibit 10 at Exhibits J, K and L; and *see also* Exhibit 16 at Exhibit M.

One publication, entitled "SIP: Session Internet Protocol," drafted by Handley, *et al.* (the "Handley reference"), is dated March 1999 and predates the earliest effective filing date (April 3, 2001) of the '646 patent by more than one year. *See* Exhibit 5 at Exhibit G; *see also* Exhibit 6 at Exhibit J; *see also* Exhibit 9 at Exhibit G; *and see also* Exhibit 10 at Exhibit K. When relying on the Handley reference, Voxpath states, "see Exhibit G, and explanation of the source IP address in Call Setup as discussed with respect to claim element 1(c), above, which is incorporated by reference." Voxpath makes no effort to explain whether or how this publication shows that any product or process allegedly meets one or more claim elements, implements the teachings of the reference, or is otherwise even relevant to the alleged infringement of the '646 patent claims.

The other publicly available, non-Defendant-specific document upon which Voxpath relies is an October 23, 2008 Internet Draft (the "Internet Draft") that issued months after VoxPath filed

its lawsuit and that is set to expire on April 26, 2009. VoxPath provides no explanation or rationale to connect the Internet Draft to any accused product, service or system. *See* Exhibit 5 at Exhibit F; *see also* Exhibit 6 at Exhibit I; *see also* Exhibit 9 at Exhibit F; *see also* Exhibit 10 at Exhibit J and *see also* Exhibit 16 at Exhibit M. This standards-proposal draft document simply provides no support for VoxPath's allegations of infringement against any particular accused product or process of any Defendant.

Even if the Internet Draft were an established industry standard (and it indisputably is not), VoxPath cannot rely upon it alone as a basis for its infringement contentions. *Linex Techs., Inc.*, 2008 WL 4372708 at *4 (Exhibit 22). In *Linex*, the Court specifically held that reliance on an industry standard alone was insufficient to put the defendant on notice of how each particular accused device is alleged to infringe the asserted claims. Even though the accused products were advertised by the defendants as being compliant with the 802.11n-standard, the Court found that the plaintiff must "link the 802.11n-standard configuration to the Accused Products." *Id.; see also ConnectTel, LLC v. Cisco Sys., Inc.*, *supra*, at 527.

Here, the connection of the Handley reference and the Internet Draft to the Defendants' accused products and processes is even more attenuated, as the Internet Draft is merely a proposal, not a standard at all, and is dated after VoxPath filed its lawsuit. And, as noted above, the Handley reference is prior art to the '646 patent, which VoxPath cannot claim to be covered by the '646 patent. VoxPath has simply provided no rationale to support its citation of these references.

In *ConnecTel*, also, the claim charts at issue cited to third-party publications in support of plaintiff's infringement contentions. This Court found that the citations to third-party publications did not "specifically identify where in this literature any elements of the asserted claims are found" and ordered ConnecTel to serve more detailed infringement contentions in compliance

with P.R. 3-1. *Id.*, 391 F. Supp. 2d at 527-28. Here, Voxpath's unexplained reliance on the Handley reference and the Internet Draft (as well as its unexplained references to a three-page web document apparently posted by Technology Marketing Corporation on its website www.tmnet.com), together with the absence of any other demonstration of where each element of each claim can allegedly be found within each Accused Instrumentality, renders its Contentions both deficient and meaningless.

In sum, Defendants operate very sophisticated and complicated products and operate very extensive networks. Defendants should not be left guessing as to which specific aspects or components of their products, processes or networks Voxpath accuses of infringement.

## III. VOXPATH SHOULD BE COMPELLED TO SERVE PROPER INFRINGEMENT CONTENTIONS

### A. Voxpath Has No Excuse For Its Deficient Infringement Contentions.

Apparently recognizing the inadequacy of its Infringement Contentions, Voxpath attempts to justify the deficiencies in its Contentions on the ground that discovery is in its early stages and is ongoing. Specifically, Voxpath states that its contentions are "based upon information that Voxpath has been able to obtain publicly, together with Voxpath's current good faith beliefs regarding the Accused Instrumentalities," noting that Defendants have not yet produced any documents and things or been deposed. *Id.* at 1-2. This excuse rings hollow since the Patent Rules specifically require plaintiffs to disclose their infringement contentions before discovery has begun. *See* P.R. 3-1. And the Patent Rules do so for a very fundamental reason -- to ensure that plaintiffs comply with their pre-filing responsibilities. In this matter, there is every indication that Voxpath has not come close to conducting the requisite pre-filing investigation. Its "no discovery" excuse impermissibly attempts to shift its duty of conducting a proper pre-filing investigation onto Defendants. Even assuming, *arguendo*, that VoxPath is correct that it needs

discovery to provide Rule-compliant Contentions (an assertion that Defendants dispute), if Voxpath needed additional information outside of the publicly available information on Defendants' websites to provide proper Contentions, it should have taken this discovery from the Defendants prior to serving its Contentions. Despite having had ample opportunity to do so, VoxPath chose not to serve any written discovery on Defendants or notice any depositions.

**B.** **Defendants Are Prejudiced by Voxpath's Insufficient Supplemental Infringement Contentions And Will Remain Prejudiced Unless And Until VoxPath Serves Infringement Contentions That Comply With This Court's Patent Rules.**

Voxpath's approach to filing this lawsuit and preparing its infringement contentions has severely prejudiced Defendants. Like its original Contentions, Voxpath's Supplemental Contentions amount to nothing more than unsupported accusations and unfounded speculation. Defendants are left to guess at what parts of their extensive networks are allegedly affected, how their products or processes are allegedly infringing, and what functionality or structure(s) or other components of their networks, products or processes allegedly infringe the asserted patent claims. This renders adequate preparation of Defendants' defenses impossible. Second, Voxpath's unfounded and limitless Contentions make it impossible for Defendants to fulfill their disclosure obligations under P.R. 3-4(a). Defendants are eager to meet their Rule 3-4 obligations and to move this case forward. They cannot do so in light of Voxpath's machinations with respect to its Contentions, and they should not be required to expend -- and waste -- millions of dollars to collect, review and produce documents in the absence of properly detailed and supported infringement contentions. Defendants, in short, should not be required to engage in a very expensive fishing expedition on VoxPath's behalf, for that would turn the purposes of the Court's Patent Rules on their head.

14

## CONCLUSION

The modifications in the Supplemental Contentions consist essentially of changing the title of the right-hand column, replacing the term "Accused Instrumentality" with the name of a given Defendant's product or service, and stating at least 8 different times that "upon information and belief, SIP packet traces . . . will reveal" evidence of infringement -- an apparent admission that VoxPath has not done any meaningful investigation of Defendants' products or services.

In addition, the Supplemental Contentions still have the same deficiencies of the original Contentions. (i) The same boilerplate is used for each and every accused product or service of each and every Defendant, without identifying or addressing any specific allegedly infringing aspect of any Accused Instrumentality. (ii) The "information" in the contentions section of the claim charts with respect to every claim element consists primarily of a word-for-word repetition of the claim language. (iii) Publicly available documents are repeatedly cited without any indication even of how the information in those documents might pertain to whatever accused products or services are being accused. (iv) No information is provided as to "*where* each element of each claim is found within each Accused Instrumentality" and no information is provided about "the identity of the structure(s), act(s) or material(s) in the Accused Instrumentality that performs the claimed function."

Consequently, for the reasons stated above, Defendants respectfully request that the Court grant this motion and order Voxpath to provide proper Rule 3-1 Infringement Contentions forthwith.

Dated:  January 14, 2009    Respectfully submitted,


*/s/ E. Glenn Thames, Jr.*     
Robert C. Bertin
r.bertin@binham.com
Warren A. Fitch
tony.fitch@bingham.com
Krista L. Lynch
krista.lynch@bingham.com
Bingham McCutchen LLP
2020 K Street, N.W.
Washington, DC 20006-1806
Telephone: 202-373-6000
Fax: 202-373-6001

E. Glenn Thames, Jr.
State Bar No. 00785097
glennthames@potterminton.com
POTTER MINTON
A Professional Corporation
500 Plaza Tower
110 North College Avenue
Tyler, TX  75702
(903) 597-8311 (Telephone)
(903) 593-0846
**COUNSEL FOR APPTIX, INC. and COVAD
COMMUNICATIONS GROUP, INC.**


Eric W. Buether - Attorney in Charge
Texas State Bar No. 03316880
buethere@gtlaw.com
Christopher M. Joe
Texas State Bar No. 00787770
joec@gtlaw.com
Jamie A. Mathew
State Bar No. 24051006
mathewj@gtlaw.com
GREENBERG TRAURIG, LLP
2200 Ross Avenue, Suite 5200
Dallas, Texas 75201
Phone: (214) 665-3664
Fax: (214) 665-5964

James J. DeCarlo
decarloj@gtlaw.com
200 Park Avenue
New York, New York 10166
Phone: (212) 801-9200
Fax: (212) 801-6400
**COUNSEL FOR BROADVIEW NETWORKS,
INC., and BROADVIEW NETWORKS
HOLDINGS, INC.**

Mark C. Nelson (Lead Attorney)
Texas State Bar No. 00793361
Sonnenschein Nath & Rosenthal LLP
1717 Main Street, Suite 3400
Dallas, Texas 75201-7395
Telephone: (214) 259-0901
Facsimile: (214) 259-0910
Email: mcnelson@sonnenschein.com

E. Glenn Thames, Jr.
State Bar No. 00785097
glennthames@potterminton.com
POTTER MINTON
A Professional Corporation
500 Plaza Tower
110 North College Avenue
Tyler, TX 75702
(903) 597-8311 (Telephone)
(903) 593-0846
**COUNSEL FOR EMBARQ
COMMUNICATIONS, INC.**

Clyde M. Siebman
Larry Phillips
Siebman, Reynolds, Burg, Phillips & Smith LLP
Federal Courthouse Square
300 N. Travis Street
Sherman, Texas 75090
(903) 870-0070 - Telephone
(903) 870-0066 – Fax

Charles B. Molster, III (DC Bar No. 386821)
cmolster@winston.com
Winston & Strawn LLP
1700 K Street, NW
Washington, DC 20006
(202) 282-5988
(202) 282-5100(fax)

Dan K. Webb (IL Bar No. 02954087)
Dwebb@winston.com
Peter C. McCabe III (IL Bar No. 06190379)
Pmccabe@winston.com
Winston & Strawn LLP
35 West Wacker Dr.
Chicago, Illinois 60601
(312) 558-5600

Pejman F. Sharifi (NY Bar No. 3923091)
psharifi@winston.com
Jason S. Charkow (NY Bar No. 4096954)
jcharkow@winston.com
Winston & Strawn LLP
200 Park Avenue
New York, NY 10166-4193
(212) 294-6700

**COUNSEL FOR VERIZON BUSINESS
NETWORK SERVICES INC, VERIZON
SELECT SERVICES, INC., VERIZON
TELEPRODUCTS CORP., and MCI
COMMUNICATIONS SERVICES, INC.**

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that all counsel of record who are deemed to have
consented to electronic service are being served with a copy of this document via the Court's
CM/ECF system per Local Rule CV-5(a)(3) on January14, 2009.

*/s/ E. Glenn Thames, Jr.*
E. Glenn Thames, Jr.

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for defendants have complied with the meet and confer requirement in Local Rule CV-7(h). This motion is opposed. The personal conference required by Local Rule CV-7(h) was conducted on December 30, 2008 via telephone conference with the following participants:

| | |
|---|---|
| Plaintiff Voxpath Networks, Inc. | Marc A. Fenster, Patrick R. Anderson, Andrew W. Spangler |
| Defendant Apptix, Inc. | Robert C. Bertin, W. Anthony Fitch, E. Glenn Thames, Jr. |
| Defendants Broadview Networks, Inc. and Broadview Networks Holdings, Inc. | James J. DeCarlo, Eric W. Buether |
| Defendant Covad Communications Group, Inc. | Robert C. Bertin, W. Anthony Fitch, E. Glenn Thames, Jr. |
| Defendant Embarq Communications, Inc. | Mark C. Nelson, E. Glenn Thames, Jr. |
| Defendant MCI Communications Services, Inc. | Clyde M. Siebman |
| Defendants Verizon Business Network Services Inc., Verizon Select Services Inc., and Verizon Teleproducts Corp. | Charles B. Molster, III, Anne W. Stukes, Clyde M. Siebman, Larry Phillips |

The parties were each given the opportunity to express his or her views concerning the dispute. The participants compared views and had a discussion in an attempt to resolve their differing views. Following the conference, Plaintiff made certain changes to its Infringement Contentions. Because the changes did not rectify the inadequacies, Defendants wrote Plaintiff's counsel and informed Plaintiff that the contentions were still inadequate and offered to engage in another meet and confer if Plaintiff would agree to further revise the infringement contentions. The deadline for Defendants to produce documents pursuant to PR 3-4(a) or move for protection is today, January 14, 2009, and Plaintiff has not agreed to make further revisions. Thus, discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

*/s/ E. Glenn Thames, Jr.*
E. Glenn Thames, Jr.